UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO NUNEZ, individually and on behalf of others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>BAE SYSTEMS SAN DIEGO SHIP REPAIR INC., a California Corporation; and DOES 1 through 50 inclusive,<br><br>          Defendants. | Case No.: 16-CV-2162 JLS (NLS)<br><br>**ORDER (1) GRANTING FINAL SETTLEMENT MOTION; (2) GRANTING MOTION FOR ATTORNEY'S FEES; AND (3) GRANTING MOTION TO SUBSTITUTE PARTY**<br><br>(ECF Nos. 37, 46, 47) |

Presently before the Court is Class Counsel's and Defendant BAE Systems San Diego Ship Repair, Inc.'s (collectively, the "Parties") Joint Motion for Final Approval of Class Action Settlement ("Final Settlement Mot."). (ECF No. 46.) Because the Settlement is fundamentally fair, reasonable, and adequate, the Court **GRANTS** the Parties' Final Settlement Motion. Also before the Court is Class Counsel's Motion for Attorney's Fees, Costs, and Incentive Fees ("Fee Mot."). (ECF No. 47.) Given that the attorney's fees are set at the Ninth Circuit benchmark, and that the remaining fees and costs are reasonable, the Court **GRANTS** Class Counsel's Fee Motion. Finally, the Parties seek to replace the sole named Plaintiff Eduardo Nunez with another Class Member, arguing that by objecting

to the Final Settlement, Nunez has a conflict of interest with the Class and can no longer serve as an adequate Class Representative. (Joint Motion for Substitution of Class Representative in Place of Eduardo Nunez ("Mot. to Substitute"). (ECF No. 37.) The Court **GRANTS** the Parties' Motion to Substitute and substitutes Plaintiff Bryan De Anda as the sole named Plaintiff.

## BACKGROUND

Plaintiff Eduardo Nunez filed a class action suit seeking compensation on behalf of all non-exempt employees of Defendant BAE Systems San Diego Ship Repair Inc. ("BAE SDSR") for unpaid wages and penalties, as well as other violations of California law. (Final Settlement Mot. 7,[1] ECF No. 46-1; *see also generally* Second Am. Compl. ("SAC"), ECF No. 11.) Defendant BAE SDSR is an international defense, aerospace, and security company that maintains a single shipyard in San Diego Bay, where it works on virtually all types of government and commercial vessels (e.g., the U.S. Navy fleet). (SAC ¶ 14.) The proposed class includes all non-exempt employees at BAE SDSR who worked at any time during the period May 27, 2012 through October 13, 2016 (collectively, "Class," "Settlement Class," or "Class Members"). (Final Settlement Mot. 7.) Plaintiff's Second Amended Complaint asserts seven claims for relief under various provisions of California law:

1. Failure to Pay Straight-Time & Overtime Wages
2. Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.)
3. Failure to Provide Accurate Wage Statements
4. Failure to Provide Rest Periods
5. Failure to Reimburse Employees for Business Expenses
6. Failure to Provide All Compensation Owed Upon Termination of Employment
7. Violation of the Private Attorney General Act

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

(*See generally* SAC.) Among other claims, Plaintiff alleges that because there would typically be 100 BAE SDSR workers waiting in line to pass through a checkpoint before they could break their shift for lunch, Plaintiff and other workers were not provided with a full 30-minute meal break due to the time spent waiting in line. (*Id.* ¶ 10.) Thus, Plaintiff argues Defendant failed to provide Plaintiff and other workers with a duty-free 30-minute meal period and failed to pay the Class its wages for their time spent, for example, disembarking from the ship, returning tools, and waiting in the security line. (*Id.*) Plaintiff additionally alleges that Defendant improperly forced him and others to purchase clothes and shoes from Defendant and that Defendant did not provide reimbursements for these purchases. (*Id.*) As a result of this, and other, fraudulent behavior, Plaintiff alleges the wage statements that Defendant provided were inaccurate. (*Id.* ¶ 11.) In sum, Plaintiff alleges that the Class Members are "similarly situated persons who are presently employed or were formerly employed as non-exempt employees of Defendant BAE SDSR in San Diego, California who: 1) were not paid straight-time wages for all work time; 2) were not paid premium overtime wages for all work performed in excess of eight hours in one workday or over forty hours in one workweek; 3) were not provided with duty-free meal 30-minute meal breaks; and/or, 4) were not provided accurate itemized wage statements." (*Id.* ¶ 12.)

The Parties entered into extensive pre-suit negotiations for the purpose of settling their disputes, such as (1) voluntary exchange of information, including BAE SDSR's employment policies, sworn declarations from putative class members, and thousands of electronic records containing class member data (e.g., individualized rates of pay, employment dates, time records, and badge swipe data); and (2) a full-day mediation in San Francisco with Mr. Anthony ("Antonio") Piazza, Esq., of Mediated Negotiations. (Final Settlement Mot. 9–12; Prelim. Settlement Mot. 10, ECF No. 15-1.) The mediation was successful and resulted in a non-reversionary settlement of $2.9 million, (Final Settlement Mot. 11–12), though Defendant BAE SDSR maintains its complete denial of wrongdoing, (e.g., Prelim. Settlement Mot. 9 n.1).

On February 13, 2017, the Court issued an Order (1) conditionally certifying the settlement class action; (2) preliminarily approving the proposed settlement; (3) approving the notice to be sent to the Class; and (4) setting a final approval hearing date. ("Prelim. Settlement Order," ECF No. 18.) On March 15, 2017, the Court-appointed Settlement Administrator mailed the Class Notice to 1,970 Settlement Class Members. (Final Settlement Mot. 6.) Settlement Class Members were advised that they could object to or opt-out of the Settlement by no later than May 15, 2017. (*Id.*) Relevant to the pending motions, the Notice contained the following language for those interested in objecting to the proposed settlement:

> As long as you do not 'opt out' from the settlement, you have the right to object to the settlement. To do so, you **must send to the Court**, the attorneys for the parties whose addresses are listed below, **and the Claims Administrator** whose address is above your objection in writing and the objection must be postmarked no later than **May 15, 2017**. The objection must state: (a) your full legal name, home address, telephone number, last four digits of your social security number (for identity verification purposes); (b) the words 'Notice of Objection' or 'Formal Objection;' (c) in clear and concise terms, **the legal and factual arguments supporting the objection**; and (d) a **list identifying the witness(es)** you as the objector may call to testify at the Fairness Hearing, as well as **true and correct copies of any exhibit(s)** you intend to offer. Your objection should be directed to the Hon. Janis L. Sammartino, United States District Court – Southern District of California, 221 West Broadway, Suite 4135, San Diego, California 92101 and must reference case number *3:16-cv-02162-JLS-NLS*.

(*Id.* at 21 (citing Decl. of Abigail Schwartz on Behalf of Rust Consulting, Inc. in Support of Mot. for Final Approval ("Schwartz Decl.") ¶ 8, Ex. A ("Notice"), at 4, ECF No. 46-5 (emphasis added by the Parties)).) Only one Class Member opted out, and six Class

Members attempted[2] to file objections. (*Id.*)

On May 2, 2017, Plaintiff Nunez and Defendant BAE SDSR filed a Joint Motion to Reset the Final Approval Hearing to June 15, 2017, instead of the original date of July 27, 2017, given the lengthy delay between the opt-out and objection deadline and the date of the Final Approval Hearing. (ECF No. 19.) On May 4, 2017, the Court granted the Joint Motion, instructing Plaintiff and Defendant to immediately contact Class Members who timely object to the Settlement or who otherwise noticed their intent to appear at the Final Approval Hearing and apprise them of the new date. (ECF No. 20.)

Then, on May 12, 2017, the Court received a contested motion to substitute attorney filed by Plaintiff Nunez. (ECF No. 24.) Four days later the Court received a notice of Plaintiff Nunez's objection to the Settlement. (ECF No. 27). Given these developments, the Court vacated the newly reset Final Fairness Hearing Date and ordered all parties to appear for a status conference set for May 25, 2017. (ECF No. 35.) At the status conference, the Court granted Nunez's motion to substitute attorneys from the law firm Hewgill & Cobb to represent him in his individual capacity as an objector to the Settlement (not as new Class Counsel), and also requested briefing on the question of whether Nunez could continue to serve as the sole named Class Representative given his eleventh-hour objections to the Settlement. (ECF No. 36.) Briefing was completed on June 12, 2017, (ECF No. 40), and the Court took all arguments under submission to be considered together with any motion for final approval of the settlement. (ECF No. 41.) The Court also reset the date for the Final Approval Hearing to the original date of July 27, 2017. (*Id.*) The Court held a final fairness hearing on November 7, 2017.

After considering some of the arguments raised in the Class Members' objections, addressed more thoroughly below, the Court ordered supplemental notice to the Class to address certain issues. (ECF Nos. 57, 59.) The Court also granted the Class a new

---

[2] The Court further addresses the procedural and substantive deficiencies of these objections below. However, the Court here notes that three of the objections were not timely filed, (ECF Nos. 42, 43, 44), and the other three failed to send their objections to the Settlement Administrator, (ECF Nos. 27, 28, 32).

opportunity to opt-out of the Settlement, as well as a limited opportunity to file new objections to the Settlement and Class Counsel's Motion for Attorney's Fees. (*Id.*)

On October 24, 2017, the Parties (Class Members and Defendant) filed a Supplemental Memorandum in Support of the Joint Motion for Final Approval of Class Action Settlement. (ECF No. 60.) The Supplemental Memorandum states that on August 15, 2017 the Court-appointed Settlement Administrator mailed supplemental notice to 1,968 class members—two class members had opted out prior to the mailing. (*Id.* at 2.) In response to the supplemental notice, no class members opted out and no new objections were filed or provided to counsel or the claims administrator. (*Id.* at 3.)

The Parties now present to the Court Joint Motions for an Order: (1) reaffirming the Court's certification of the Settlement Class; (2) granting final approval of the Settlement Agreement; (3) approving of and awarding attorney's fees, costs, and a Class Representative service award; and (4) removing Nunez as named Class Representative and substituting De Anda in his place. The Parties have also filed a supplemental brief addressing the responses from Class Members after the supplemental notice.

## SETTLEMENT TERMS

The Parties have submitted a comprehensive settlement document with approximately twenty-three pages of substantive terms. (Prelim. Settlement Mot. Ex. 1, Joint Stipulation of Settlement and Release ("Settlement Agreement") 31–60, ECF No. 15-1.) The Settlement provides monetary relief, but no programmatic relief,[3] in exchange for a defined release of liability. At the time of signing and preliminary approval of this Settlement Agreement, Plaintiff Eduardo Nunez, as Class Representative, supported the Settlement Agreement.[4] (*Id.* at 54.)

BAE SDSR stands to pay a Maximum Settlement Amount of $2.9 million. (Final

---

[3] As noted above, although BAE SDSR stipulates both to certification of a Settlement Class and the proposed Settlement, Defendant continues to deny all allegations of unlawful conduct alleged in the Complaint, and does not admit or concede that it has, in any manner, violated federal or California laws or committed any other unlawful action that would entitle Plaintiff or any class to any recovery.

[4] However, as discussed below, he now objects to its terms on several grounds.

Settlement Mot. 7.) BAE SDSR will automatically make Settlement payments to Class Members (unless they have chosen to opt out) based on the following formula:

> After deducting from the Maximum Settlement Amount the Court-approved attorneys' fees and costs for Class Counsel, a payment for the Settlement Administrator's fees and expenses, payment to the State of California Labor and Workforce Development Agency ("LWDA"), the employer's portion of FICA, FUTA, and all other state and federal payroll taxes on the "wage" portion of the Settlement payments to Class Members, an additional flat amount of $250.00 for each employee separated from employment during the Covered Period ("Wait Time Penalties"), and a Court-approved service payment to the Class Representative(s), the entirety of the remaining funds (the "Net Settlement Amount") shall automatically be distributed to the payment-eligible Settlement Class Members. *See* Settlement Agreement, ¶¶ 11, 31b (ECF No. 15-1).

> Payment-eligible Class Members will receive a payment based on each person's number of compensable work-weeks, which shall be all weeks worked as a non-exempt employee by the Payment-Eligible Class Members since May 12, 2012 ("Compensable Work Weeks"). The dollars per Compensable Work Week will be calculated by dividing the total Compensable Work Weeks for the entire Settlement Class into the Net Settlement Amount. That amount (in dollars per week) will be multiplied by the number of Compensable Work Weeks for each payment-eligible Class Member. *Id.* ¶ 31b.

(*Id.*) The check will escheat to the State of California or any other State having jurisdiction over the Class Member's assets if the Class Member fails to cash his or her check within 120 days after it is mailed. (*Id.* at 8.)

## RULE 23 SETTLEMENT CLASS CERTIFICATION

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). In the present case, the Court previously provisionally certified the

16-CV-2162 JLS (NLS)

Settlement Class for purposes of settlement only. (Prelim. Settlement Order 16.) While the Parties now question Plaintiff Nunez's ability to serve as an adequate Class Representative, nothing has changed to affect the propriety of certification of the Settlement Class as a whole. Accordingly, the Court's analysis here is largely the same as in its Preliminary Settlement Order, with the addition of a more detailed discussion of Nunez's ability to serve as an adequate representative under Federal Rule of Civil Procedure 23(a)(4).

Class actions are governed by Federal Rule of Civil Procedure 23. In order to certify a class, each of the four requirements of Rule 23(a) must first be met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) allows a class to be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Next, in addition to Rule 23(a)'s requirements, the proposed class must satisfy the requirements of one of the subdivisions of Rule 23(b). *Zinser*, 253 F.3d at 1186. Here, Plaintiff seeks to certify the Settlement Class under subdivision Rule 23(b)(3), which permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court addresses each of these requirements in turn.

## I. Rule 23(a)(1): Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242

F.R.D. 544, 549 (N.D. Cal. 2007).

Here, the proposed Settlement Class consists of approximately 1,968 individuals,[5] all of who are identifiable from BAE SDSR's data. (Final Settlement Mot. 6.) Accordingly, joinder of all members would be impracticable for purposes of Rule 23(a)(1), and the numerosity requirement is therefore satisfied.

## II.    Rule 23(a)(2): Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality requires that "the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, the Parties have carefully defined the Settlement Class to encompass all BAE SDSR employees adversely affected by the allegedly fraudulent policies and practices set forth above. (*See generally* SAC.) All common questions thus revolve around whether the alleged fraudulent policies and practices in fact were fraudulent and impacted the class members. Accordingly, it is appropriate for these issues to be adjudicated on a class-wide basis, and Rule 23(a)(2) is satisfied.

## III.    Rule 23(a)(3): Typicality

To satisfy Federal Rule of Civil Procedure 23(a)(3), Plaintiff's claims must be typical of the claims of the Class. The typicality requirement is "permissive" and requires only that Plaintiff's claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique

---

[5] The original notice was mailed to 1,970 members; however, two Class Members opted out in between the original notice and the supplemental notice. (ECF No. 60, at 2 n.1.)

to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (citation omitted).

Here, Plaintiff Nunez is a BAE SDSR employee whose claims allegedly arise out of the same underlying BAE SDSR policies and practices as those pertaining to the proposed Settlement Class. (*See* SAC; Prelim. Settlement Mot. 17–18.) Accordingly, Plaintiff's claims are typical of the claims of the members of the proposed Settlement Class, thus satisfying Rule 23(a)(3).

## IV. Rule 23(a)(4): Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires that the named representatives fairly and adequately protect the interests of the class. "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). To determine legal adequacy, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

The Court previously found that there was no reason to believe either Class Counsel or Plaintiff Nunez, the sole named representative, had any conflicts of interest with the Class or would not vigorously prosecute the action on their behalf. (Prelim. Settlement Order 7.) But that was before Nunez objected to the Settlement, which, at the May 25, 2017 Status Conference, Class Counsel and Defendant argued put Nunez in direct conflict with the best interests of the Class. The Parties briefed the issue, seeking to remove Nunez and replace him with Mr. De Anda, and Nunez opposed the motion. (*See* ECF Nos. 37, 38, 40.)

This scenario appears to be one of first impression in the Ninth Circuit, and seems

to raise two distinct questions. First, before anything can happen with this Settlement, the Court must determine whether Nunez can serve as an adequate Class Representative under Rule 23(a)(4). This is a prerequisite to certifying the Class for the present settlement purposes. Second, if the Court determines that Nunez can adequately serve the Class and also determines that the Settlement is fair, reasonable, and adequate, the Court must further determine whether Nunez can continue to serve as an adequate Class Representative, given that his continued objections to the Settlement at that point would put the Class's recovery under the Settlement, which the Court would have determined to be in their best interests, in jeopardy. The question thus becomes whether Nunez would at that point have a conflict of interest with the Class such that he could no longer serve as an adequate representative on their behalf. Given the different procedural postures of these questions, the Court reserves its discussion of the second question until later. *See infra* "MOTION TO SUBSTITUTE CLASS REPRESENTATIVE" (pp. 38–42) [hereinafter *Class Rep. Discussion*]. For now, the Court considers whether Nunez is an adequate representative for class certification purposes.

In the Ninth Circuit, "'[e]xamination of potential conflicts of interest has long been an important prerequisite to class certification" and "is especially critical when the . . . class settlement is tendered along with a motion for class certification." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (citing *Hanlon*, 150 F.3d at 1020). However, "'[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'" *Id.* (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)). "A conflict is fundamental when it goes to the specific issues in controversy." *Id.*

The Parties argue Nunez has a conflict of interest with the Class, and thus can no longer adequately represent them, because (1) he objects to the final approval of the Settlement, (*see generally* Mot. to Substitute), and (2) he has undermined his own credibility and thus is an unsuitable Class Representative, (Mot. to Substitute Reply 6–7, ECF No. 40).

The Court rejects the Parties' first argument—namely, that by virtue of objecting to the Settlement Nunez is automatically conflicted out of representing the Class. Of course, the nature of the objections implicate distinct considerations and may reveal a conflict. But the mere act of objecting itself is insufficient, since those objections may instead reveal deficiencies in the Settlement to the benefit of the class; such an objection would be in concert—not in conflict—with the best interests of the class. Indeed, as the Sixth Circuit recently opined in a similar scenario in *Olden v. Gardner*,

> [a]lthough we ultimately conclude that the district court did not abuse its discretion in replacing the original class representatives, this is a close question in this case and we may well have made a different decision if we were the trial judges. Replacing class representatives for objecting to a proposed settlement appears inconsistent with the theory of class representatives. Class representatives are expected to protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). This requires that the class representatives exercise some oversight of the class counsel so as to avoid simply turning the conduct of the case over to the class counsel. *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 615 (S.D. Ohio 2003). Oversight from the class representatives is particularly important in the context of settlements. *See In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257, 262 (N.D. Cal. 1996) (risk of unfair settlement is greater when negotiations are carried out "without meaningful oversight by class representative"). These principles suggest that class representatives should not be removed from their positions as class representatives simply because they have attempted to fulfill their duty to protect the interests of the class.

294 F. App'x 210, 220 (6th Cir. 2008).

Of course, in *Gardner* the Sixth Circuit ultimately concluded that the district court did not abuse its discretion in replacing the class representatives for objecting to the settlement. And the Parties cite the district court's underlying decision in *Gardner*, among others, to bolster their argument that objecting to a class settlement puts a representative in conflict with the class. But, as Nunez points out, those motions were granted after the respective district courts granted final approval of the settlement agreements. (Mot. to

12

Substitute Opp'n 11–12, ECF No. 38.)  In other words, the crux of those decisions was that because the Court found the settlements fair, reasonable, and adequate, the objecting-representatives' continued objections to the settlement put them in direct conflict with the class as a whole, which now had impending judicially approved relief absent further protestation.  Thus, while certainly relevant to the present case, the Court considers these cases below, in the later-presented procedural posture, *infra Class Rep. Discussion*, when discussing the Parties' Motion to Substitute Class Representative.  At this juncture, the Court concludes that the mere act of a class representative objecting to a settlement is insufficient, on its own, to demonstrate that the representative has a conflict of interest with the class.

That said, as discussed, the *substance* of those objections may reveal a conflict of interest with the Class.  And although the Court later addresses the substance and procedural deficiencies of these objections, the Parties argue that one objection in particular makes Nunez an inadequate representative even at this procedural step: that is, that Nunez has undermined his own credibility and thus can no longer serve as class representative.  (Mot. to Substitute Reply 6–7.)  Specifically, the Parties point to Nunez's first objection, that he "did not attend the settlement conference held on September 16, 2016, nor did [he] know it was occurring beforehand."  (Notice of Objection filed by Eduardo Nunez ("Nunez Objs.") ¶ 1, ECF No. 27 (emphasis added).)  However, Nunez later backtracked and admitted that Mr. Dychter called him and said "[g]ood news, I got a date for the mediation."  (Decl. of Plaintiff Eduardo Nunez in Support of his Opposition to the Joint Mot. to Substitute New Class Representative ("Nunez Substitute Opp'n Decl.") ¶ 34, ECF No. 38-3.)  But Nunez still declares that Mr. Dychter "did not tell [him] the date of the mediation."  (*Id.*)

These are, at some level, inconsistent statements: Nunez first says he had no idea a mediation was occurring, and later reveals that he had notice of the mediation, just not a specific date.  And the Parties are right that "[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry 'because

an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'" *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010); *see also In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) ("[I]t is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs.").

But "[c]redibility problems do not automatically render a proposed class representative inadequate." *Harris*, 753 F. Supp. 2d at 1015 (internal quotation marks omitted). "'Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate.'" *Id.* (quoting *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 177 (S.D.N.Y. 2008)). Here, the Court finds that this single inconsistency in Nunez's testimony, while somewhat disquieting, is not "so sharp as to jeopardize the interests of absent class members." *Id.* After all, Nunez at least sticks to his story that he did not know what day the mediation would take place. Moreover, the remainder of his declaration demonstrates that he was at some level engaged with the litigation by, for example, contacting Mr. Dychter for updates on the case. (*See, e.g.*, Nunez Substitute Opp'n Decl. ¶¶ 28–44.) Accordingly, the Court finds that Nunez is an adequate representative for class certification purposes.

In sum, there is no reason to believe that the named representative and Class Counsel have any conflict of interest with the proposed Settlement Class members. There is also no reason to believe that the named representative and Class Counsel have thus far failed to vigorously investigate and litigate this case. Plaintiff has retained competent Class Counsel, who have conducted extensive investigation, research, and informal discovery in this case. (*See generally* Final Settlement Mot.) Furthermore, Class Counsel have significant class action litigation experience, are knowledgeable about the applicable law, and will continue to commit their resources to further the interests of the Class. (*Id.* at 19.) Accordingly, the named representative and Class Counsel adequately represent the proposed Settlement Class members, and Rule 23(a)(4)'s adequacy requirement is met.

## V. Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### A. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

Here, the common issues of whether Defendant's policies and practices failed to, for example, compensate Class Members for all time worked, provide an opportunity for compliant meal and rest periods, and provide accurate wage statements predominate over the individual issues such as length of employment and particularized grievances. (*See, e.g.*, Prelim. Settlement Mot. 19–20.) Further, for purposes of settlement, Class Members are not required to prove any evidentiary or factual issues that could arise in litigation. Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

### B. Superiority

The final requirement for certification pursuant to Federal Rule of Civil Procedure 23(b)(3) is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority inquiry requires the Court to consider the four factors listed in Rule 23(b)(3):

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

*See also Zinser*, 253 F.3d at 1190. A court need not consider the fourth factor, however,

when certification is solely for the purpose of settlement. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1066 n.12 (C.D. Cal. 2010); *see also Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). The superiority inquiry focuses "'on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis.'" *Zinser*, 253 F.3d at 1190 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1780, at 562 (2d ed. 1986)). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Here, Class Members' claims involve the same issues arising from the same factual bases. If Class Members' claims were considered on an individual basis, roughly 1,968 cases would follow a similar trajectory, and each would come to a similar result. Furthermore, individual cases would consume a significant amount of the Court's and the Class Members' resources. It is also likely that Class Members would not pursue litigation on an individual basis due to the high costs of pursuing individual claims. The interests of the Class Members in individually controlling the litigation are minimal, especially given the same broad-based policy and practices would be at issue. Moreover, while the Court has received a few objections to the Settlement, which the Court addresses in more detail below, none actually challenge the resolution of this matter on a class-wide basis. (*See* ECF Nos. 27, 28, 32, 42, 43, 44.) Additionally, because the majority of BAE SDSR's employees are located in San Diego, many of the individual cases would likely be filed in this district, and thus it is desirable to concentrate the litigation in a single forum. Given all of the above, class treatment is the superior method of adjudicating this controversy, and the superiority requirement of Rule 23(b)(3) is met.

## VI. Conclusion

For the reasons stated above, the Court finds certification of the Settlement Class

proper under Rule 23(b)(3). Accordingly, the Court **REAFFIRMS** certification of the Settlement Class for settlement purposes only.

**RULE 23 FINAL APPROVAL DETERMINATION**

Having certified the Settlement Class, the Court must next determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e). Relevant factors to this determination include:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. Furthermore, due to the "dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative," any "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Id.*

## I.     Strength of Plaintiff's Case

In order to succeed on the merits, Plaintiff would have to prove that Defendant's practices and policies were fraudulent. (*See, e.g.*, SAC ¶ 1 (listing causes of action).) Plaintiff estimates BAE SDSR's potential liability exposure on the underlying Labor Code claims to be approximately $11.5 million. (*See, e.g.*, Prelim. Settlement Mot. 23; Decl. of Alexander I. Dychter in Supp. of Mot. for Final Approval of Class Action Settlement ("Dychter Decl.") ¶ 9, ECF No. 46-3 (noting a potential maximum liability of eight figures).) BAE SDSR denies any wrongdoing, that Plaintiff is entitled to any relief at law or equity, and that Plaintiff would be able to validly certify a class in the absence of the proposed settlement. (*See, e.g.*, Final Settlement Mot. 13–16 (listing Defendant's arguments against Plaintiff's claims, such as the difficulty of proving liability under the

17

California Labor Code given its inapplicability to workers who worked on federal ships under the Federal Enclave Doctrine)); (Decl. of Anthony Piazza in Supp. of Joint Mot. to Substitute New Class Rep. in Place of Eduardo Nunez ("Piazza Decl.") ¶ 7, ECF No. 37-6 (noting the strengths of Defendant's positions relative to Plaintiff's claims).) Additionally, the Settlement is the result of arm's-length negotiations conducted over several months, including each Party's individual discovery and valuation of the case and one full-day mediation session before an experienced and nationally renowned mediator. (Final Settlement Mot. 9–12.) Given the Parties' disagreement and a neutral third-party evaluation of the same, the Court finds that this factor weighs in favor of the $2.9 million settlement being fair, reasonable, and adequate. *See, e.g.*, *Bond v. Ferguson Enters., Inc.*, No. 1:09-CV-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation.").

## II. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Were the case to proceed to further litigation rather than settlement, the Parties would each bear substantial risk and a strong likelihood of protracted and contentious litigation. Even though the Parties have agreed to settle this action, they fundamentally disagree regarding the validity of Plaintiff's claims, and, as discussed, Defendant highlights a number of likely meritorious arguments against Plaintiff's claims. (*See, e.g.*, Final Settlement Mot. 9–16.) Additionally, the Parties predict lengthy discovery disputes over class member contact information, site inspections of secure government facilities, and significant electronic discovery were this Settlement to be rejected and litigation to ensue, and thus argue that the present Settlement affords Class Members at least some compensation where there might be none. (*Id.* at 16.) Indeed, the fact that Defendant disputes all aspects of Plaintiff's claims, including the propriety of class certification in the absence of the Settlement Agreement, suggests that these issues would be vigorously (and therefore costly) litigated were there to be further litigation. Given the foregoing, this

factor weighs in favor the settlement being fair, reasonable, and adequate. *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

## III.    Risk of Maintaining Class Action Status Throughout Trial

The Parties dispute whether the Class can be validly certified in the absence of the Settlement Agreement. Implicit in this disagreement is the likelihood of initial challenges to class certification and the potential for decertification motions even if class status is granted.  (*See, e.g.*, Final Settlement Mot. 16–17 (noting in particular that the Federal Enclave Doctrine would serve as a significant bar to certification).)  Weighed against the fact that Defendant does not object to a finding that the class elements are met for purposes of this settlement, this factor also weighs in favor of the settlement being fair, reasonable, and adequate. *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) ("Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement." (citation omitted)).

## IV.    Amount Offered in Settlement

BAE SDSR has agreed to pay $2.9 million to settle this lawsuit. (Final Settlement Mot. 6.)  The crux of Plaintiff's claims is that BAE SDSR failed to pay the Class Members the entirety of their earned wages.  Because BAE SDSR has data regarding each affected Class Member, which it provided to Plaintiff prior to negotiating the Settlement Agreement, the proof of each Class Member's damages is largely calculable and less prone to subjective considerations.  Indeed, the Parties note that the average settlement amount for each Class Member is approximately $890 and the highest individual settlement payment is estimated to be approximately $2,500.  (*Id.* at 6 (citing Schwartz Decl. ¶ 13).)  Of course, Class Counsel admits that the Settlement reflects recovery equal to approximately 26% of the potential estimated value of all Plaintiff's underlying California Labor Code claims.  (*Id.* at 17.)  But Class Counsel readily admits that such claims may

never have been proved in light of the federal enclave issue and other available defenses, and that a more realistic assessment of class-wide damages would have been a fraction of the "soaking wet" evaluation of roughly $11.5 million. (*Id.* (citing Dychter Decl. ¶¶ 13–15).) Accordingly, this factor weighs in favor of the settlement being fair, reasonable, and adequate. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (finding that a settlement amount worth roughly one-sixth of the potential recovery was fair and adequate given the difficulties in proving the case); *Bennett v. SimplexGrinnell LP*, No. 11-CV-01854-JST, 2015 WL 1849543, at *7 (N.D. Cal. Apr. 22, 2015) ("The Court finds that the class members' net recovery of at least . . . approximately thirty percent of the maximum exposure figure . . . is fair, reasonable, and adequate . . . .").

## V.      Extent of Discovery Completed and Stage of Proceedings

Prior to the agreed-upon settlement, the Parties engaged in substantial informal discovery, including exchanging payroll, timekeeping, and other records. (Final Settlement Mot. 18–19.) Defendant also performed its own investigation, interviewing approximately ninety potential class members and collecting approximately eighty-three declarations, on which it relied to demonstrate the disparity of Class Member experiences and that proper compensation was paid for time worked. (*Id.* at 10) And as discussed, the Parties engaged a neutral third-party mediator who fully examined and discussed with each party the strengths and weakness of each party's case. (*Id.* at 9–12.) Both Class Counsel and Defense Counsel gained significant knowledge of the relevant facts and law throughout the informal discovery process and through independent investigation and evaluation. Accordingly, it appears the Parties have entered into the Settlement Agreement with a strong working knowledge of the relevant facts, law, and strengths and weaknesses of their claims and defenses. Given all of the above, this factor weighs in favor of the proposed settlement being fair, reasonable, and adequate. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (upholding district court finding and explaining that in the absence of formal discovery this factor turns on whether "the parties have sufficient information to make an

20

informed decision about settlement"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (approving settlement where informal discovery gave the parties "a clear view of the strength and weaknesses of their cases").

## VI.    Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). And here, Class Counsel believes the Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Settlement Class. (Final Settlement Mot. 19; Settlement Agreement ¶ 63.) Furthermore, in the present case the presumption of reasonableness is warranted based on Class Counsel's expertise in complex litigation, familiarity with the relevant facts and law, and significant experience negotiating other class and collective action settlements. (*See, e.g.*, Dychter Decl. ¶¶ 3–4 (describing experience); Decl. of Walter L. Haines in Supp. of Mot. for Final Approval of Class Action Settlement ("Haines Decl.") ¶ 3, ECF No. 46-4 (same).) Given the foregoing, and according the appropriate weight to the judgment of these experienced counsel, this factor weighs in favor of the proposed settlement being fair, reasonable, and adequate. *See, e.g.*, *Rodriguez*, 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation . . . ." (citation omitted)); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 821–23 (9th Cir. 2012) ("[T]he district court properly declined to undermine [the parties'] negotiations by second-guessing the parties' decision as part of its fairness review over the settlement agreement."); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 490 (E.D. Cal. 2010) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977))).

## VII.    Reaction of Class Members to the Proposed Settlement

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *Vasquez*, 266 F.R.D. at 490 (quoting *Nat'l Rural*

*Telecomms. Coop.*, 221 F.R.D. at 528).  "Class representatives' opinions of the settlement are especially important because '[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class.'"  *Id.* (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D at 528 (citing *Manual for Complex Litigation, Third*, § 30.44 (1995))).  "Generally, 'the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.'"  *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011) (quoting *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529).  Of the 1,970 originally noticed Class Members, only one—or .05% of the Class—opted out.  (Schwartz Decl. ¶ 11.)  Additionally, a total of six Class Members—or .3% of the Class— attempted to file objections.  (ECF Nos. 27, 28, 32, 42, 43, 44.)  Of the 1,968[6] Class Members receiving supplemental notice <u>none</u> objected. (ECF No. 60, at 2.) Thus, as a purely numerical observation, the overwhelming positive response to the Settlement strongly supports final approval.  *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming final approval where approximately 0.61% of class members either opted out or objected); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, No. MDL 08-1977-MHM, 2010 WL 3715138, at *6 (D. Ariz. Aug. 31, 2010) (finding that low number of timely written objections and requests for exclusion supported settlement approval).

### A. *Objections*

But as discussed, six Class Members attempted to file objections to the Settlement. The Court uses the term "attempted" because the Parties argue that these objections are procedurally improper and, even if considered, are insufficient to demonstrate that the

---

[6] Two members are no longer part of the class because they opted out of the settlement.  (ECF No. 60, at 2 n.1.)

16-CV-2162 JLS (NLS)

Settlement is not fair, reasonable, and adequate.  (Final Settlement Mot. 20–27.)  The Court agrees with both arguments.

First, the Parties argue that the six objections are procedurally improper because the Objectors failed to follow the Court-approved Notice to the Settlement Class, mailed on March 15, 2017, which read as follows:

> As long as you do not 'opt out' from the settlement, you have the right to object to the settlement.  To do so, you **must send to the Court**, the attorneys for the parties whose addresses are listed below, **and the Claims Administrator** whose address is above your objection in writing and the objection must be postmarked no later than **May 15, 2017**.  The objection must state: (a) your full legal name, home address, telephone number, last four digits of your social security number (for identity verification purposes); (b) the words 'Notice of Objection' or 'Formal Objection;' (c) in clear and concise terms, **the legal and factual arguments supporting the objection**; and (d) a **list identifying the witness(es)** you as the objector may call to testify at the Fairness Hearing, as well as **true and correct copies of any exhibit(s)** you intend to offer.  Your objection should be directed to the Hon. Janis L. Sammartino, United States District Court – Southern District of California, 221 West Broadway, Suite 4135, San Diego, California 92101 and must reference case number *3:16-cv-02162-JLS-NLS*.

(Final Settlement Mot. 21 (citing Notice 4 (emphasis added by the Parties)).)

The Court agrees with the Parties that no compliant objections were submitted.  Three objections were postmarked after May 15, 2017 and filed late.  (ECF Nos. 42, 43, 44 (bearing signatures of June 1 and June 7, 2017).)  The other three, (ECF Nos. 27, 28, 32), were never sent to the Settlement Administrator. (Schwartz Decl. ¶ 12.) Furthermore, no objections were submitted to the Settlement Administrator until June 14, 2017, nearly one month later than the May 15, 2017 deadline.  (Schwartz Decl. ¶ 12.)  Accordingly, the Court overrules these objections for failure to follow the objection procedures outlined in the Court-approved Notice.  *See, e.g.*, *Noll v. eBay, Inc.*, 309 F.R.D. 593, 612 (N.D. Cal. 2015) (discounting objection for failure to timely file); *see also Chavez v. PVH Corp.*, No.

13-CV-01797-LHK, 2015 WL 9258144, at *3 (N.D. Cal. Dec. 18, 2015), *appeal dismissed* (Feb. 4, 2016) (same and collecting authority); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) (overruling several objections for failure to meet various noticed procedural requirements).

Even if the Court considers the substance of the objections, which it need not given their procedural deficiencies, none of the objections persuade the Court that the Settlement is not fair, reasonable, and adequate. In assessing these objections, the Court "keep[s] in mind that objectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." *Noll*, 309 F.R.D at 611 (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)).

These objections, which the Parties label "cookie-cutter," (Final Settlement Mot. 22), raise largely the same issues. First, two of the unsworn and untimely objections claim that Defendant forced employees to arrive inside of the BAE SDSR shipyard before 6 a.m., but did not pay them "for they time [they] are there prior to 6 a[.]m[.]" (ECF Nos. 42, ¶ 1; 43, ¶ 3.) However, this claim that employees were not paid for all time under Defendant's control is one of the primary causes of action asserted in the operative complaint. Indeed, the SAC specifically states that the class members were required to arrive prior to the 6:00 a.m. start time, and that such time was uncompensated in violation of California law. (Final Settlement Mot. 22–23 (citing SAC ¶¶ 8, 9).) The Parties evaluated and discounted the value of this claim during their negotiations. (*Id.*)

Second, some of these Objectors claim that "BAE has always, and still does, deducts [sic] a minimum of 15 minutes' worth of time from my paycheck when I clock in one or more minutes late to work. This is not addressed in the complaint or the settlement of the case." (*See, e.g.*, Nunez Objs. ¶ 4.) However, as discussed above, the Parties note that the operative complaint specifically addressed unlawful deductions and uncompensated work time, claims that were undermined both by the Federal Enclave Doctrine and the information collected from the declarants in preparation for the Parties' negotiations. (Final Settlement Mot. 23 (citing SAC ¶¶ 1, 12, 28–29, 53; Wemmer Decl. ¶ 4j, ECF No.

15-2).)  The value of this claim was also evaluated and discounted during the Parties'
negotiations.  (*Id.*)

Third, some of these Objectors allege that Defendant "is still forcing us to take the
bus into work, [and] is not paying us for our time riding their buses to work."  (*See, e.g.*,
Nunez Objs. ¶ 2.)  No Objector substantiates this claim with any evidence or an offer to
provide witness testimony.  (*Id.* ¶ 13 ("Witnesses for my statements: [blank.]").)  On the
other hand, Defendant offers evidence that employees are not forced to take a bus; rather,
employees are permitted to drive to and park at the different sites at which they may be
assigned to work.  (Final Settlement Mot. 24 (citing Decl. of Mary Dollarhide in Supp. of
Mot. for Final Approval of Class Action Settlement ("Dollarhide Decl.") ¶ 7, ECF No. 46-
2).)  BAE SDSR employees are allowed—but not required—to take courtesy shuttles
provided by Defendant to their work locations.  (*Id.*)

Fourth, these Objectors state that they "believe that the settlement is too low of an
amount for all of the money BAE owes us for these problems."  (*See, e.g.*, Nunez Objs.,
¶ 8; Notice of Objection filed by Juan Pablo Lopez Donan ("Donan Objs.") ¶ 4, ECF No.
28); Notice of Objection filed by Jose Cruz ("Cruz Objs.") ¶ 3, ECF No. 32).)  This
objection is unpersuasive for at least two reasons.  For one, to the extent a Class Member
felt the settlement amount was too low, he or she was free to opt out and pursue separate
claims against Defendant BAE SDSR; out of 1,970 original Class Members, three people
chose to do so.  Additionally, not one Objector substantiates his belief with any evidence
or argument that this settlement amount is too low.  This is insufficient to rebut the Parties'
evidence and argument that the settlement was negotiated at arms' length between
experienced counsel and a respected mediator who actually evaluated the case. Indeed, the
question before the Court

> "is not whether the final product could be prettier, smarter or
> snazzier, but whether it is fair, adequate and free from collusion.'
> Even if every suggestion represents an actual potential
> 'improvement," and even considering all the suggestions
> cumulatively, they do not support a conclusion that this

settlement is the product of collusion, or otherwise fails to meet the minimum threshold of fairness and adequacy.

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 948 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) (citing *Hanlon*, 150 F.3d at 1027).

The remaining objections appear to be personal to the Objector, and thus do not speak to the overall fairness or value of the Settlement itself.[7] (*See, e.g.*, Nunez Objs. ¶ 6 (claiming that BAE SDSR is retaliating against him for being the named Plaintiff by giving him "unwarranted and baseless write ups"); Donan Objs. ¶ 3 (claiming that BAE SDSR penalizes him for calling in sick); ECF No. 43, ¶ 1 (claiming he was reprimanded for calling into work sick, which was the reason why he did not receive pay raises).) Indeed, to the extent these Objectors feel that the Settlement Agreement does not adequately address their specific circumstances, the more appropriate course of action was for these Objectors to opt out of the Class, rather than bar final approval of a settlement where 99.64% of the Class Members find the Settlement to be in their best interests. (Final Settlement Mot. 25.) And those claiming retaliation of some sort remain free to pursue his or her claim in an appropriate legal forum; no such causes of action are resolved, released, or waived with the approval of this Settlement. (*Id.* at 27.)

In sum, the Court overrules the six Objectors' set of objections as raising concerns that are either (1) already adequately addressed by the Settlement Agreement or (2) specific to the individual Objectors such that they do not raise a genuine concern as to all Class Members.

/ / /

---

[7] Several of the objections also note that the Objector "went to the Boilermakers union, Local 1998 to get help because of all of the ongoing problems at BAE" and that they "asked for help from the Law Office of Hewgill & Cobb" because of these alleged problems. (*See, e.g.*, Nunez Objs. ¶¶ 9–11.) These are not proper objections to the settlement itself. Indeed, BAE SDSR employees remained free to pursue any legal claims they feel they may have, and were also free to opt out of the settlement if they wished to litigate these specific claims, with or without the aid of the law firm Hewgill & Cobb.

### B. Opposition Brief

In addition to the six objections above, Plaintiff Nunez filed a Response in Opposition to the Final Approval of Proposed Settlement and Current Class Counsel's Mot. for Fee. ("Final Settlement Mot. Opp'n," ECF No. 48.)  As with the procedurally deficient objections, the Court again notes that this opposition brief failed to follow the Court-noticed procedure, which, as already discussed, required that any objections to final approval be filed with the Court by May 15, 2017.  These objections were to include: "in clear and concise terms, the legal and factual arguments supporting the objection; and . . . a list identifying the witness(es) you as the objector may call to testify at the Fairness Hearing, as well as true and correct copies of any exhibit(s) you intend to offer."  (*See* Notice 4.)  Thus, this opposition brief, filed two weeks before the Final Approval Hearing, is untimely and procedurally deficient.  On this basis the Court may overrule the objections and arguments set forth therein.  *See, e.g.*, *Noll v. eBay, Inc.*, 309 F.R.D. 593, 612 (N.D. Cal. 2015) (discounting objection for failure to timely file); *Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 9258144, at *3 (N.D. Cal. Dec. 18, 2015), *appeal dismissed* (Feb. 4, 2016) (same and collecting authority); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) (overruling several objections for failure to meet various noticed procedural requirements).

That said, "settlement class actions present unique due process concerns for absent class members, and the district court has a fiduciary duty to look after the interests of those absent class members."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal citations and quotation marks omitted); *see also id.* (citing, e.g., *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (stating that "trial judges bear the important responsibility of protecting absent class members, and must be assur[ed] that the settlement represents adequate compensation for the release of the class claims" (internal quotation marks omitted)); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002) (at the settlement phase, the district judge is "a fiduciary of the class," subject "to the high duty of care that the law requires of fiduciaries"); and *Maywalt v. Parker & Parsley Petrol. Co.*,

67 F.3d 1072, 1078 (2d Cir. 1995) (noting that "the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately" (internal quotation marks omitted))). Accordingly, as the fiduciary of the Class and in order to protect the interests of absent Class Members, the Court exercises its discretion and nevertheless consider the substance of Nunez's Opposition in its fiduciary duty to the Class.[8]

In his Opposition, Nunez outlines several objections to the proposed Settlement: (1) the waiver is overly broad, not properly noticed, and fails the Exact Factual Predicate doctrine; (2) $2.9 million is insufficient to compensate the class for the harms Class Members have suffered; (3) Plaintiffs' claims have a high likelihood of success; (4) the proposed Settlement is based on inadequate investigation and lacks factual and evidentiary support; and (5) the Settlement should be rejected because the circumstances show collusion and conflict with the Class. (*See generally* Final Settlement Mot. Opp'n.) The Court considers each argument in turn.

### 1. Waiver Concerns

Where there is a class settlement, Federal Rule of Civil Procedure 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir.

---

[8] Plaintiff Nunez also filed a Sur Reply styled as a Response to Joint Evidentiary Objections to Declarations Submitted in Support of Opposition to Joint Motion for Final Approval of Class Action Settlement. (ECF No. 53.) This sur reply was filed the night before the previous final fairness hearing without an order from the Court. Nunez cites *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), for the proposition that this Court has the duty to allow objectors' comments, declarations, and evidence to be considered during the final fairness hearing. (ECF No. 53, at 2.) *Gulf Oil* dealt with the "authority of district courts under the Federal Rules to impose sweeping limitations on communications by named plaintiffs and their counsel to prospective class members." *Gulf Oil*, 452 U.S. at 99. This issue is inapposite to the settlement here. Further, to the extent that *Gulf Oil* directs district courts to follow the Federal Rules, the Court considered the substance of Nunez's objection as briefed in his Opposition. Because the Court exercised its discretion to consider Nunez's Opposition, the Court denies the Sur Reply, (ECF No. 53), as improperly filed and duplicative of the substance of Nunez's Opposition.

2009) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975) ("[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.").

Nunez objects to the waiver provision of the Settlement Agreement for various reasons. The Court considers each in turn.

### a. Inadequate Notice

First, Nunez argues that the Class was not given adequate notice of the entire scope of the waiver—that is, that the period of release described in the waiver is greater than that described in the notice sent out to Class Members. (*Id.* at 13–14.) On August 2, 2017, the Court agreed with this argument and ordered that supplemental notice be sent to the Class to apprise them of the full scope of their release of liability. (ECF No. 57.) The Court approved of the supplemental notice, (ECF No. 59), and the Court now finds that the Class has been fully apprised of their release of liability.

### b. Waiver Overbreadth

Second, Nunez argues that the scope of the Settlement release is overbroad with respect to which harms are released. (Final Settlement Mot. Opp'n 14.) Specifically, Nunez argues that settlements in class cases must only waive those causes of action which have been raised by the applicable complaint pursuant to the exact factual predicate doctrine. (*Id.* (citing *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010)).)

In the Ninth Circuit, "[a] settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse*, 598 F.3d at 590 (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)). The Ninth Circuit has "held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement." *Id.* (collecting authority).

Nunez argues that language in releases which waive claims "in any way related" to the facts claimed in the operative complaint are too expansive and fail this doctrine, (Final Settlement Mot. Opp'n 14), which, according to him, is exactly the type of language used in the release in this Settlement Agreement, (*id.* at 14–17.)

The full scope of the release reads as follows:

> Class Members' Released Claims: All Class Members who do not timely opt out of the Settlement, whether or not they endorse, cash, deposit or otherwise accept their Settlement checks, including but not limited to those Class Members whose checks are returned as undeliverable and/or those for whom no current addresses can be found, will release and discharge SDSR, and all of its former and present parents, subsidiaries, and affiliates, and their current and former officers, directors, employees, partners, shareholders and agents, and the predecessors and successors, assigns, and legal representatives of all such entities and individuals ("Class Members' Released Parties"), from any and all disputes regarding wages and hours worked, claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, **related in any way to unpaid wages**, including overtime premium pay, meal and rest period penalty pay, failure to reimburse business expenses, and statutory or civil penalties arising during the period from May 27, 2012, to the date on which the Court gives final approval of the Settlement. The claims released by the Class Members include, but are not limited to, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorney's fees, litigation costs, restitution, or equitable relief, for the following categories of allegations: (a) all claims for failure to pay wages for hours worked, including overtime premium pay; (b) all claims for failure to pay the minimum wage in accordance with applicable law; (c) all claims for the failure to provide meal and/or rest periods in accordance with applicable law, including payments for missed meal and/or rest periods and alleged non-payment of wages for meal periods worked and not taken; (d) all claims for unlawful deductions from wages; (e) all claims for failure to reimburse expenditures; and (f) any and all claims for recordkeeping or pay stub violations, waiting time penalties and all other civil and statutory penalties, including those recoverable

under PAGA ("Class Members' Released Claims"). The Class Members' Released Claims include without limitation claims meeting the above definition(s) under any and all applicable statutes, including without limitation California Labor Code sections 96 through 98.2 *et seq.*, the California Payment of Wages Law, and in particular, California Labor Code §§ 200 *et seq.*, including California Labor Code §§ **200 through 243** and §§ 203 and 218 and 218.5 in particular, California Labor Code §§ 300 *et seq.*; California Labor Code §§ 400 *et seq.*; California Working Hours Law, California Labor Code §§ 500 *et seq.*, California Labor Code §§ 750 *et seq.*, California Labor Code §§ 1194 and 1197; California Labor Code §§ 2802 and 2804; the California Unfair Competition Act, and in particular, California Bus. & Prof. Code §§ 17200 *et seq.*; the PAGA; California Code of Civil Procedure § 1021.5; and any other provision of the California Labor Code or any applicable California Industrial Welfare Commission Wage Orders, in all of their iterations, as well as any applicable federal labor laws.

(Settlement Agreement ¶ 57 (emphases added by Nunez).)

Nunez targets the language "related in any way to unpaid wages"[9] to argue that the release is overly broad or otherwise fails the factual predicate doctrine. (Final Settlement Mot. Opp'n 15–17.) Nunez also argues that this language is similar to the language found overly broad in *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014).

As an initial matter, Nunez's reliance on *Willner* is misplaced. The Court in *Willner* found to be overly broad release language that "improperly releases any claims 'whether known or unknown, up to and including January 20, 2012, that are related in any way to any claim alleged in the lawsuit.'" *Id.* Specifically, the Court noted that the phrase "related in any way" could "capture claims that go beyond the scope of the allegations in the operative complaint, which the Ninth Circuit has held is inappropriate." *Id.* (citing *Hesse*,

---

[9] The actual language Nunez cites is "in any way related to unpaid wages." (Final Settlement Mot. Opp'n 15.) However, that language does not appear in the Settlement Agreement. Accordingly, the Court assumes Nunez instead meant to cite the language "related in any way to."

598 F.3d at 590.)

The present release is not as broad. Unlike the release language in *Willner*, that purported to release claims "that are related in any way to <u>any claim alleged in the lawsuit</u>," *id.* (emphasis added), the present release is tied to claims "related in any way <u>to unpaid wages</u>," (Settlement Agreement ¶ 57). The Notice further reinforces this limitation, informing Class Members that "individual claims for non-wage related claims such as for workers' compensation shall be specifically excluded from this release." (Notice 5.)

However, the release itself does not contain language tethering the released claims to the facts alleged in the operative Complaint. (*See generally* Settlement Agreement ¶ 56.) The *Willner* Court suggested that the "excessive breadth [of the settlement release] could be cured by changing the phrase 'related in any way' to 'arise out of the allegations in the operative complaint.'" *Id.* (citing *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011)). Indeed, the Parties urge the Court to rely on *Collins* to find the release adequate, (Final Settlement Mot. Reply 8–9), but even that court found adequate a release that was limited to "the Covered Claims based on the facts alleged in the Second Amended Complaint [] filed in the Lawsuit," *Collins*, 274 F.R.D. at 303 (alternations in original); s*ee also id.* (noting that the released claims "appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants").

That said, the Notice sent to the Class Members states that Class Members "will be releasing the claims and causes of action asserted in the operative Complaint on file in the Class Action between May 27, 2012 and October 13, 2016, or which could have been alleged <u>based on the facts set forth in the operative Complaint</u>, related to allegations that you failed to receive all wages." (Notice 4 (emphasis added).) So cabined, the release does not run afoul of the exact factual predicate doctrine because the released claims are tethered to "the facts set forth in the operative Complaint." (*Id.*) And at the July 27, 2017 hearing Defendant BAE SDSR reaffirmed that it is bound by the terms sent out in the Notice. Accordingly, the Court finds that the release is not overbroad.

Nunez further argues that he "and his fellow objectors are particularly concerned with preserving claims they have against the Defendant for violation of California and municipal sick leave laws." (Final Settlement Mot. Opp'n 15.) Thus, Nunez argues that such claims would be released because the release encompasses claims arising out of California Labor Code § 200 through § 243, on which Nunez and his fellow objectors would rely to bring sick leave claims against Defendant. (*Id.* at 15–16.) However, the Parties note that those California Labor Code sections are released only insofar as they relate to claims "related in any way to unpaid wages," as the release makes clear. (Final Settlement Mot. Reply 7–8.) The Parties further reference the Notice, which, as discussed, states that "individual claims for non-wage related claims . . . shall be specifically excluded from this release." (*Id.*) And the Parties affirmatively state to the Court that such claims "have not been released." (*Id.* at 8; *see also* Final Settlement Mot. 26 ("Neither the operative Complaint nor the Settlement Agreement address such allegations regarding Defendant's treatment of absences. No such claims have been resolved in this Settlement. Therefore, the 'Objectors' remain able to pursue such claims, with or without the legal representation of Hewgill & Cobb, should they so desire.")) Accordingly, the Court finds that the release does not release any claims related to Defendant's potential violation of California and municipal sick leave laws.[10]

### 2. *Sufficiency of the Settlement Fund*

Nunez also argues that $2.9 million is insufficient to compensate the Class for the harms they have suffered. (Final Settlement Mot. Opp'n 18.) According to Nunez:

> Based on investigations, counsel for Mr. Nunez and his fellow objectors estimate that during the class period there were on average roughly eight hundred (800) nonexempt employees working at the Defendant's facility at an average hourly rate of not less than $20.00. Under these assumptions just the meal break violations alone could sum as high as $20,736,000. *See*

---

[10] Additionally, to the extent any such claims are brought against Defendant in the future, and Defendant contests them based on the language of the release, such arguments would be judicially estopped based on the statements made to the Court in this proceeding.

the Declaration of Rusanne Anthony at ¶3. The rest break violations could sum to an equal $20,736,000. *Id.* If we assume that on average Class members were subjected to ten (10) minutes of unpaid time a shift the unpaid wages in this matter sum at $2,073,600.00 (in reality this number could be significantly higher because it is quite possible Class Members on average worked more than ten minutes of unpaid time). *Id.* at ¶ 3. Finally, under the same assumptions the waiting time penalties (Labor Code § 203) sum as high $5,616,000.00. *Id.* at ¶ 3.

(*Id.* at 11–12.)

The Parties lay out a number of evidentiary objections to these calculations. (*See* Joint Evidentiary Objs. to Decls. Submitted in Supp. of Opp'n to Joint Mot. for Final Approval of Class Action Settlement ("Evid. Objs.") ¶ C, ECF No. 51-2 (noting that, among other things, these calculations are improper hypotheticals presented by a lay witness, lack foundation, personal knowledge, and assume facts regarding the number of full-time workers for the purposes of damages calculations).) The Court finds the substance of these objections persuasive, and a few are worth noting.[11] For one, Nunez claims that the "rest break violations could sum to an equal $20,736,000." (Final Settlement Mot. Opp'n 11.) This calculation appears to rest, in part, on the premise that "[a]ll Class Members are subjected to the delay of walking off the ship single file, walking down three flights of stairs, and occasional enhanced security." (*Id.* at 9.) However, the Parties point out that there is no evidence of this claim, and that such a claim ignores the fact that many Class Members never worked aboard a ship at all, let alone one with enhanced security or three flights of stairs. (Final Settlement Mot. Reply 6.) Additionally, as to the claim that "there were on average roughly 800 nonexempt employees working at the Defendant's facility at an average hourly rate of not less than $20.00," the Parties note

---

[11] As a procedural matter, the Court **DENIES AS MOOT** the Joint Evidentiary Objections, (ECF No. 51-2). Given that the Court considered and ultimately rejects the arguments in Nunez's Opposition Brief, the Court has considered the substance of the Joint Evidentiary Objections and given the outcome of the present motions the objections themselves are moot.

that (1) there is no basis for these "estimates;" (2) these numbers ignore the lack of state law applicability for those working on a federal enclave; and (3) the analysis fails to differentiate how many of these employees are ship workers, to whom these conditions may be applicable, versus other employees who have never set foot on a ship or had to travel anywhere to enjoy their breaks. (*Id.*)

> More importantly, however, the Court reiterates that the question before the Court

>> "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." Even if every suggestion represents an actual potential "improvement," and even considering all the suggestions cumulatively, they do not support a conclusion that *this* settlement is the product of collusion, or otherwise fails to meet the minimum threshold of fairness and adequacy.

*Fraley*, 966 F. Supp. 2d at 948. Thus, even if Nunez could demonstrate that the potential recovery in this case was significantly higher than the results achieved in the Settlement Agreement, that alone would not render the present Settlement unfair, unreasonable, or inadequate. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("'It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" (quoting *Officers for Justice*, 688 F.2d at 628)). Absent evidence of collusion, the resolution reached by the Parties during arms-length negotiations should not normally be disturbed. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (noting that "the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery"). Rather, "it is the nature of a settlement, as a highly negotiated compromise . . . that '[i]t may be unavoidable that some class members will always be happier with a given result than others.'" *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citing *Officers for Justice*, 688 F.2d at 624). A settlement that is fair, reasonable, and adequate for the Class as a whole may nevertheless leave a smaller recovery for a small subset of Class Members who had a chance of larger

individual recovery. But as already noted, such individuals were free to opt-out of the Settlement. And, indeed, such individuals had <u>another</u> opportunity to opt-out given that the original Notice was inadequate. Accordingly, the Court finds that the $2.9 million Settlement amount is fair even if Nunez is right that a larger sum could have been achieved.

### 3. *Likelihood of Success on Plaintiffs' Claims*

Nunez argues that the Parties "rely heavily on supposed low likelihoods of success of the Plaintiff Class' causes of action," to which the objectors cannot assent. (Final Settlement Mot. Opp'n 19.) Nunez then summarily discusses the four categorical claims he contends are meritorious and have a high likelihood of success: (1) meal break claims, (2) rest break claims, (3) unpaid hours claims, and (4) waiting time claims. (*Id.* at 19–21.) Lastly, Nunez argues that damages are ascertainable from Defendant's extensive records and that the Parties greatly overstate Defendant's potential federal enclave defense. (*Id.* at 21.) In response, the Parties argue that Nunez seeks "to turn this hearing into a trial of the contested issues of fact and law that underlie the merits of this case while attempting to show that a better settlement ought to have been negotiated." (Final Settlement Mot. Reply 3.) The Parties maintain that they settled "precisely to eliminate the uncertainty, delay, risk, and expense of litigating all of these various issues" and briefly highlight such issues (*Id.* at 3, 6–7.)

The Parties correctly note the Court's role in this Circuit is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." *Officers for Justice*, 688 F.2d at 625. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what <u>might</u> have been achieved by the negotiators" because "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624–25 (emphasis added). "Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* at 625 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir.

1974)).

Nunez's arguments objecting to the proposed settlement on the basis of Plaintiff Class' claims purportedly having a high likelihood of success are unavailing. Although the Court's determination on the proposed settlement must consider "the strength of plaintiffs' case," the Court must also balance that consideration with various other factors, including at least:

> the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.

The Parties argue that had they litigated the case, the following issues, among others, would have been litigated aggressively: "the applicability of the Federal Enclave Doctrine, the reliance on California versus federal labor laws, Mr. Nunez's ability to represent secretaries and other workers, as well as the ability to certify a class including disparate workers and requiring inquiries into meal and rest breaks . . . ." (Final Settlement Mot. Reply 5.) Moreover, the Parties note that the violating conduct alleged by Nunez on behalf of all class members does not apply to the "many Class members [that] never worked aboard a ship at all, let alone one with enhanced security or three flights of stairs." (*Id.* at 6.) Therefore, the Court does not find Nunez's cursory discussion of the merits of his claims, which does little more than recite applicable California law and general allegations with minimal supporting evidence, sufficient to overturn the Court's determinations above regarding the strength of Plaintiff's case, *supra* RULE 23 FINAL APPROVAL DETERMINATION, Part I, or otherwise outweigh the other factors the Court must consider in assessing the fairness and adequacy of this Settlement, *supra* RULE 23 FINAL APPROVAL DETERMINATION, Parts I—VII.

To be sure, the Court acknowledges Nunez's arguments regarding Defendant's

potential federal enclave defense. However, the Court also finds that Nunez's arguments only further highlight the risk, expense, complexity, and likely duration of further litigation on that issue alone. Accordingly, the Court does not modify its final approval determination based on Nunez's assertion that Plaintiffs' claims have a high likelihood of success.

### 4. Factual and Evidentiary Basis of the Settlement

Nunez argues that the Settlement should be rejected because it is based on inadequate investigation and lacks factual and evidentiary support. (Final Settlement Mot. Opp'n 25–26.) Specifically, Nunez states that "Mr. Dychter's lack of discovery resulted in a severe undervaluing of the issues underlining [sic] this case, and also the overlooked and missed findings of other issues that are, [sic] highly valued." (*Id.* at 25.)

The Court finds these allegations unfounded as they relate to the damages model Class Counsel used to arrive at the $11.5 million maximum damages figure used for mediation purposes. As a refresher, when moving for preliminary approval of the Settlement, Mr. Dychter claimed that after receiving substantial amounts of data and information (including approximately 500,000 rows of electronic time-punch data in excel format listing dates of employment for all class members, pay rates, shift counts, work schedules), he retained the services of an experienced statistician, Dr. James R. Lackritz, Ph.D., who assisted Plaintiff's counsel in performing random selections for purposes of selecting a statistically significant sample of time-punch data and wage data. (Decl. of Alexander I. Dychter in Supp. of Joint Mot. for Prelim. Settlement Order ("Prelim. Settlement Dychter Decl.") ¶ 5, ECF No. 15-3.) Counsel retained Dr. Lackritz solely for purposes of mediation preparation. (*Id.*) As a result of this analysis and the information exchanged, Class Counsel valued Defendant's potential liability on the underlying Labor Code claims to be approximately $11.5 million. (*Id.* ¶ 7.)

However, Hewgill & Cobb, as counsel representing Nunez, asked Mr. Dychter for the file related to this case for review, especially any and all expert reports. (Final Settlement Mot. Opp'n 25–26 (citing Decl. of Efaon Cobb in Supp. of Objectors' Resp. to

the Joint Mot. to Approve Settlement and Atty's Fees ("Cobb Decl.") ¶ 2, ECF No. 49-3).) After a phone conversation and several emails, Mr. Dychter confirmed that Dr. Lackritz "has <u>not</u> been designated as an expert in this case . . . [and] has not prepared any report, opinion, or testimony." (Cobb Decl., Ex. D, at 14 n.1.)

This is irrelevant. As the Parties explain, "there are no facts presented that Mr. Dychter relied on Dr. Lackritz's work to calculate the damages," and that "[w]hether or not an expert provided a written statement or report for mediation is also irrelevant and immaterial." (Evid. Objs. 17.) This appears to be true—specifically, Class Counsel only claims that Dr. Lackritz performed random sample calculations that Class Counsel then used to calculate damages. Nunez cites no authority suggesting that this is an improper way to arrive at a potential damages cap for mediation purposes. And Mr. Piazza declares that Class Counsel "had conducted a sophisticated damage model that accounted for the value of each of the claims asserted, including potential violations that were later enumerated in an amended complaint, which was part of the mediated agreement." (Piazza Decl. ¶ 8.)

Nunez also argues generally that the settlement is "inadequate because it is not supported by sufficient discovery, investigation, and development of arguments in opposition to anticipated legal defenses posited by Defense counsel." (Final Settlement Mot. Opp'n 26.) In support of that statement, Nunez cites *Hanlon*, 150 F.3d at 1022, for the proposition that the court "twice discussed the plaintiffs' counsel discovery efforts, and the fact that 'traditional' discovery consisting of document requests, interrogatories, and *taking and defending depositions* had occurred." (*Id.* (emphasis added by Nunez).) While unclear, this statement presumably attacks Class Counsel for failure to depose certain witnesses as part of their settlement discovery efforts.

But *Hanlon* does not stand for the proposition that class counsel must depose witnesses for their efforts to be sufficiently vigorous to satisfy any Rule 23(a)(4) concerns. Rather, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an

informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 461 (internal quotations omitted). As discussed above, *supra* RULE 23 FINAL APPROVAL DETERMINATION, Part V, the Court has determined that the Parties engaged in substantial informal discovery efforts. Specifically, Class Counsel received "multiple employment policies, time records (*approximately 500,000 rows of electronic time-punch data in excel format were produced*), dates of employment for all class members, pay rates, shift counts, work schedules, Plaintiff's employment file, and other miscellaneous pieces of data/information," (Prelim. Settlement Dychter Decl. ¶ 5), and retained the services of Dr. Lackritz to perform random selections for purposes of selecting a statistically significant sample of time-punch data and wage data, (*id.* ¶ 5; *see also* Piazza Decl. ¶ 8 (noting that "Plaintiff's counsel had obtained a substantial amount of data and documents from defense counsel through informal exchanges prior to the mediation"); *id.* ¶ 4 ("It was clear to me based on my extensive experience that both Class Counsel and Defense Counsel were well-prepared and highly familiar with the pertinent facts and applicable law . . . .").) Nunez may argue that Class Counsel could have done more, (Final Settlement Mot. Opp'n 26), but this does not change the calculus where the Court finds, as here, that the Parties had "sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 461. Accordingly, the Court finds that Class Counsel did not conduct inadequate discovery or otherwise have an inadequate factual basis in crafting and supporting the Settlement.

### 5. *Collusion and Conflict*

Finally, Nunez argues that the Settlement should be rejected because the circumstances of the Settlement being negotiated show collusion and conflict with the Class. (Final Settlement Mot. Opp'n 26–28.) This is a hefty charge, and the Court is mindful that due to the "dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative," any "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon*, 150 F.3d at 1026.

Nunez makes two arguments in support of its contention that the Settlement is the result of collusion.  The Court considers each in turn.

### a.  Coercion

First, Nunez argues that he is "the only named plaintiff[,] opposes this settlement, and was coerced into assenting."  (Final Settlement Mot. Opp'n 26.)  The first assertion in that sentence is, on its own, irrelevant, since merely opposing a settlement does not indicate that it was the result of collusion.  The second assertion—that he was coerced into assenting to its terms—likewise does not definitively prove that the Parties actually colluded.  Specifically, the allegation that Class Counsel coerced Nunez to sign the Settlement, on its own, does not speak in any way to the actions and views of Defendant BAE SDSR in pursuing and accepting the proposed Settlement.  Nor does Nunez offer any other evidence to suggest that the Parties colluded in any way to arrive at the Settlement before the Court.  To the contrary, and as already discussed at length, the record is replete with evidence that the Settlement was reached through arms-length negotiations between experienced Class and Defense Counsel before a respected third-party mediator.  (*See, e.g.*, Piazza Decl. ¶ 5 ("The outcome was reached based on arms' length negotiation between counsel that were each zealously advocating for their respective clients.").)

Of course, Nunez's allegation of coercion, though not direct proof of collusion, is nevertheless relevant in the Court's assessment of the overall fairness and adequacy of this Settlement. As the Ninth Circuit has instructed:

> Even when there is no direct proof of explicit collusion, there is always the possibility in class action settlements that the defendant, class counsel, and class representatives will all pursue their own interests at the expense of the class. For that reason, the absence of direct proof of collusion does not reduce the need for careful review of the fairness of the settlement, particularly those aspects of the settlement that could constitute inducements to the participants in the negotiation to forego pursuit of class interests.

*Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  Otherwise put, Nunez's

allegations of coercion may reveal, for instance, that Mr. Dychter has a conflict with the Class. But that all depends on whether Nunez's allegations are sufficient to support a finding that Mr. Dychter coerced him into signing the Settlement Agreement. To that end, Nunez alleges the following:

> 38. I asked Alex what would happen if I didn't sign because I didn't think it was a good amount for the settlement. Alex said that if I don't sign another thing that may happen is that BAE will just send out checks, and when people cash them the settlement will be accepted. Alex told me that BAE would also just find someone else to take my place and get the $5,000.00. He asked me, "You don't want that, do you?"

> 39. I asked him why the problems at the work site did not change. He told me, "Don't think they are going to change because they're not." I felt like I had no choice but to sign, so I did.

(Nunez Substitute Opp'n Decl. ¶¶ 38–39.) As an initial matter, the Court finds that, even if these allegations were true, there is nothing to suggest that Mr. Dychter coerced Nunez into signing the document. While Nunez "felt like" he had no choice but to sign, there is no indication that he was forced to do so; if anything, this exchange possibly reveals that he valued a potential $5,000 banner award over his objections to the Settlement.

Of course, this is all assuming that Nunez's allegations are true. At the July 27, 2017 hearing, Mr. Dychter vehemently denied making this statement or any suggestion that he coerced Nunez into signing the Settlement Agreement. Additionally, Mr. Dychter claims that he "spent considerable time going through the Settlement Agreement with Mr. Nunez to ensure that he had no questions or concerns before he decided to sign it." (Decl. of Alexander I. Dychter in Supp. of Joint Mot. to Substitute New Class Rep. in Place of Eduardo Nunez ("Mot. to Substitute Dychter Decl.") ¶ 16.) Mr. Dychter also notes that "[a]t no time since Mr. Nunez signed the Settlement Agreement has he asked to rescind or revoke the agreement. At no time during this matter have I ever received a phone call, text message, e-mail, personal visit, or any other form of communication from Mr. Nunez to advise me that [he] was unhappy with the settlement or that he did not want to proceed as

the class representative." (*Id.*)

There is no evidence that Mr. Dychter has not been forthcoming with this Court. On the other hand, the Court has identified several inconsistencies in Nunez's representations to this Court. *See supra* RULE 23 SETTLEMENT CLASS CERTIFICATION, Part IV (noting that Nunez first stated he did not know a mediation was occurring, and later stated that he did know one was occurring); *see also infra* n.14 (noting that Nunez simultaneously states that (1) he has never heard of Mr. De Anda; and that (2) Mr. De Anda does not work at BAE SDSR and has not for some time). Given the conflicting testimony between Nunez and Mr. Dychter, the fact that Nunez did not otherwise communicate his dissatisfaction with the Settlement for months after signing it, and the inconsistencies in Nunez's own testimony, the Court finds that Nunez's allegations do not credibly establish that he was coerced into signing the Settlement Agreement.

### b. Motion for Attorney's Fees

Second, Nunez argues that Class Counsel positioned itself in conflict with the Class by (i) negotiating his fees from the corpus of the settlement, and (ii) failing to make a fee motion prior to the close of the objection period.[12] (Final Settlement Mot. Opp'n 27.)

### i. Negotiating Fees from Corpus of Settlement

Nunez argues that Class Counsel negotiated his fee from the common fund while simultaneously negotiating this proposed Settlement in contradiction of the Ninth Circuit's guidance in *Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003). But Nunez misreads *Staton*. In that case, the court condoned the "regular common fund procedure, [where] the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then apply to the court for a fee award from the fund." *Id.* at 969. Rather, the court was concerned that when "the ordinary procedure is not followed and instead <u>the parties explicitly condition the merits settlement on a fee award justified on a</u>

---

[12] Nunez also argues that the attorney's fees are unreasonable. (*See* Final Settlement Mot. Opp'n 28.) However, the Court need not reach this argument now because the Class will have another opportunity to object to the reasonableness of the attorney's fees.

common fund basis, the obvious risk arises that plaintiffs' lawyers will be induced to forego a fair settlement for their clients in order to gain a higher award of attorneys' fees." *Id.* at 970 (emphasis added).

Here, the Parties followed the ordinary procedure. The Settlement provided for an anticipated attorney's fees award of 25% of the common fund. Such an award was conditioned on the Court finally approving the Settlement as fair, reasonable, and adequate. Additionally, the Court ordered Class Counsel to move for fees so that the Court could decide whether those fees are appropriate in this case. Most importantly, there is no indication that the Settlement would rise or fall depending on whether Class Counsel received their requested fees. Indeed, rather than conditioning the Settlement on a fee award, the Settlement Agreement provides that if the Court were to award a lower amount of attorneys' fees, the Settlement would not be disturbed. (*See* Settlement Agreement ¶ 48 ("If the Court does not grant approval of the Settlement, or if the Court's approval of the Settlement is reversed or materially modified on appellate review, then this Settlement will become null and void, except that an award of a class representative payment or class counsel's attorneys' fees and expenses in an amount less than sought will not constitute a failure to grant approval or a material modification." (emphasis added)).) Thus, Nunez's reliance on *Staton* is misplaced.

ii. Failure to Timely Move for Attorney's Fees

Nunez also argues that Class Counsel failed to timely move for attorney's fees. (Final Settlement Mot. Opp'n 27.) Specifically, Nunez argues that the Ninth Circuit requires class counsel to seek its fees prior to the close of the objection period. (*Id.* (citing *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010)).) On August 2, 2017, the Court agreed with Nunez and, as part of the supplemental notice, directed Class Counsel to notify the Class of the existence of their Motion for Attorney's Fees and provide them reasonable means to object to the same. (ECF No. 57; *see also* ECF No. 59.) No objections were received. (*See* ECF No. 60.) This supplemental notice cured any deficiency and, thus, the Court finds that Class Counsel is not in conflict with the Class.

## VIII. Conclusion

For the reasons stated, the Court **GRANTS** the Parties' Final Approval Motion regarding the Rule 23 Settlement.

## ATTORNEY FEE AND COST AWARD

In the Ninth Circuit, a district court has discretion to apply either a lodestar method or a percentage-of-the-fund method in calculating a class fee award in a common fund case. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). When applying the percentage-of-the-fund method, an attorney's fees award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *see also Fischel*, 307 F.3d at 1006. However, a district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel*, 307 F.3d at 1007.

Defendant has agreed not to oppose a request by Class Counsel for fees up to the amount of $725,000, which is 25% of the Settlement Amount of $2.9 million. (Fee Mot. 2.) This amount is authorized by the Settlement Agreement and was specifically communicated in the Class Notice, which provided that "Class Counsel's reasonable attorney's fees in an amount not to exceed $725,000 (*if finally approved by the Court*)" would be paid out of the Maximum Settlement Amount. (Settlement Agreement ¶ 29; Schwartz Decl. Ex. A.) The Court previously found that this amount was presumptively reasonable given that it represents 25% of the Settlement Fund, the benchmark percentage approved by the Ninth Circuit. (*See* Prelim. Settlement Order 13–14.) Class Counsel argue their fee request is reasonable under a percentage of the fund approach. (Fee Mot. 3.)

As an initial matter, the Court agrees with Class Counsel that the percentage-of-the-fund calculation is preferable to the lodestar approach. *See, e.g., Aichele v. City of Los*

*Angeles*, No. CV1210863DMGFFMX, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) ("Many courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." (citations omitted)). Additionally,

> [a]lthough not mandated by the Ninth Circuit, courts often consider the following factors when determining the benchmark percentage to be applied: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of nonpayment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar.

*Id.* at *2 (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, *18 (C.D. Cal. June 10, 2005); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973–74 (N.D. Cal. 2001)).

In the present case, the Court finds that Class Counsel reached a favorable result for the Class. The financial terms of the settlement are favorable to Class Members—as discussed, the average settlement amount for each Class Member is approximately $890 and the highest individual settlement payment is estimated to be approximately $2,500. (Schwartz Decl. ¶ 13.) The Court has already described the experience and skill of Class Counsel, and here briefly notes the significant effort expended by Class Counsel to see this case settled to the benefit of the Class, including, for instance: (1) investigating Plaintiff's claims and filing the complaint and successive amended complaints; (2) negotiating and preparing extensive settlement documents, including preparation for the mediation with Mr. Piazza that ultimately resulted in the present Settlement Agreement; (3) moving for preliminary and final approval of the Settlement; and (4) moving to replace Plaintiff Nunez on the grounds that his objections to the Settlement Agreement conflicted with the best interests of the Class as a whole.

Additionally, as the Court has previously noted, the issues in this case are complex

and it is not at all clear that the Class would be able to recover any damages for Defendant's alleged wrongs, much less an average of almost $1,000. Specifically, Class Counsel notes that class-wide recovery would be difficult to obtain in litigation based on Defendant's arguments, including, for example, that: (1) individualized inquiries would defeat class certification of the meal break claim since not all class members were required to disembark from a ship, return tools, or wait in a security line when starting a meal period, (Fee Mot. 4); (2) the Federal Enclave Doctrine would make proof of Class-wide damages difficult, since Class Members worked on vastly different work sites where California state labor laws would not apply, (*id.* at 5); and (3) due to the fact that virtually all of Defendant's work was through the U.S. Navy pursuant to "cost-plus" contracts, there was no rational basis for Defendant to underpay its workers because the U.S. Navy paid Defendant for every minute worked by Class Members, and added a markup, which increased Defendant's profits, (*id.*). The efforts and risk Class Counsel undertook are underscored by the fact that Class Counsel represented the Class on a contingent fee basis. (*Id.* at 6.)

Further, only three Class Members requested exclusion, and only six filed (procedurally deficient) objections, which collectively represent roughly .45% of the entire Class. And, notably, while the objections raised a number of disparate issues related to Defendant and the proposed Settlement Agreement, <u>not one</u> Class Member objected to the requested award of attorney fees. Nor were there any objections to the award of attorney fees after supplemental notice was sent to Class Members. (*See* ECF No. 60.) This near-unanimous class approval and absence of fee-specific objections also weighs in favor of settlement. *See, e.g.*, *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (noting that 33.33% fee request was "especially" warranted "in light of the fact that not a single class member objected to Plaintiff's counsel's" request). For all this, Class Counsel seek only 25% of the Settlement Fund in accordance with the Ninth Circuit's benchmark percentage fee award. *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (stating that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of

the total settlement value, with 25% considered the benchmark").

Finally, the lodestar cross-check of 1.82, (Decl. of Alexander I. Dychter in Supp. of Fee Mot. ("Dychter Fee Decl.") ¶ 17 ECF No. 47-2), is reasonable in this case, given the risks, discussed above, of no recovery to the Class should the case proceed on the merits, as well as Class Counsel's taking the case on a contingency fee basis. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (approving multiplier of 3.65); *id.* n.6 (citing appendix "finding a range of 0.6–19.6, with most (20 of 24, or 83%) from 1.0–4.0 and a bare majority (13 of 24, or 54%) in the 1.5–3.0 range[,]" and noting that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied" (citation omitted)).

Nunez objects to the Class Counsel's requested attorney's fees because they are "distinctly higher" than the fees class counsel could justify using the lodestar method. *Staton*, 327 F.3d at 966. Nunez explains that Class Counsel incurred at most $288,040.00 in attorney's fees and the lodestar cross check of 1.82 yields $439,344.00. (Final Settlement Mot. Opp'n 28.) Thus, Class Counsel's requested fee of $725,000 represents a lodestar of 2.5. (*Id.*)

Nunez's argument misses the mark. First, the Court chose to apply the percentage method and 25% is the established benchmark percentage in these types of cases. *See Hanlon*, 150 F.3d at 1029. The lodestar calculation serves only to check that the requested fee is reasonable. Further, Nunez erroneously calculates Class Counsel's lodestar multiplier. Mr. Dychter's lodestar is $244,080; Mr. Speiwak's is $87,112.50; and Mr. Haines's amount is $64,745. (ECF No. 52, at 7.) Class Counsel's fees total $395,937.50. The requested fee ($725,000) divided by incurred attorney's fees ($395,937.50) yields a lodestar of 1.83. This is well within the range approved by courts in this Circuit. *See Vizcaino*, 290 F.3d at 1050–51 & n.6. Finally, the Court notes that no Class Member objected to the proposed attorney's fees. (*See* ECF No. 60.)

Given the foregoing, the Court concludes that Class Counsel's requested attorney's fees of $725,000, which constitutes 25% of the Settlement Fund, are reasonable and

therefore **GRANTS** Class Counsel's Fee Motion in this regard. (*See also* Fee Mot. 12 (collecting cases where Class Counsel has been awarded 25% of the total settlement value in similar employment actions).)

Additionally, Class Counsel move for reimbursement for costs in the amount of $14,995.34. (*Id.* at 14 (citing Dychter Fee Decl. ¶ 21).) The Settlement Agreement also provided that Class Counsel would be entitled to reimbursement of "costs in an amount not to exceed $20,000." (*Id.* (citing, e.g., Settlement Agreement ¶ 29).) Class Counsel represents that these costs were reasonably incurred in the prosecution of this matter and provides declarations to that effect. (*Id.* (citing, e.g., Dychter Fee Decl. ¶ 21).) Specifically, Class Counsel's costs include (1) $12,000 towards mediation fees, (2) $1,435 towards the complaint filing fee in San Diego County Superior Court, (Dychter Fee Decl. ¶ 21), and (3) $991.47 for Mr. Haines' court fees and travel fees associated with the September 16, 2016 mediation and the status conference held on May 25, 2017, (Decl. of Walter L. Haines in Supp. of Fee Mot. ("Haines Fee Decl.") ¶ 9, ECF No. 47-4).

The Court finds reasonable the costs associated with researching and filing the complaint commencing the action. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (noting that "filing fees and photocopies are also a necessary expense of litigation"). The Court also finds reasonable Class Counsel's travel costs associated with attending the mediation and the May status conference. *Id.* at 1177 ("'The reimbursement for travel expenses, both under 28 U.S.C. § 1920 and [Rule] 54(d), is within the broad discretion of the Court.'" (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1369 (1996))). And the Court finds reasonable the fees incurred with mediating this complex case before Mr. Piazza, particularly given Class Counsel's preparation and participation in the mediation, the reputation of the mediator, and the fact that the mediation resulted in this Settlement Agreement, which the Court has found to be fair, reasonable, and adequate. *See, e.g.*, *id.* at 1178 (concluding that "mediation expenses in this case are both reasonable and necessary" and collecting cases awarding fees for mediation expenses). Accordingly, the Court concludes that all of these costs are validly

recoverable and therefore **GRANTS** Class Counsel's Fee Motion in this regard. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (noting an attorney usually may recover "out-of-pocket expenses that 'would normally be charged to a fee paying client'" and holding that facts of the case demonstrated the reasonableness of costs for "service of summons and complaint, service of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employment record reproduction").

## CLASS REPRESENTATIVE SERVICE AWARD PROVISION

The Ninth Circuit recognizes that named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton*, 327 F.3d at 977. The district court must evaluate each incentive award individually, using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). This individualized inquiry naturally means that "a court need not award all named plaintiffs the same incentive payment." *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015).

In the present case, the Settlement Agreement provides up to $5,000 to the Class Representative, to be paid from the Maximum Payment, in addition to the Settlement payment he may otherwise receive as a Class Member. (Settlement Agreement ¶ 30.) The Class Notice states that this award is "an enhancement fee to the named plaintiff to compensate him for the time, work, and risks undertaken in bringing this Class Action." (*Id.* Ex. A, ECF No. 15-1, at 57; Schwartz Decl. Ex. A, ¶ 1.)

Given the Parties' Motion to Substitute, Class Counsel suggest either that (1) if the Court finds that Nunez is not an adequate representative, Bryan De Anda should be awarded $2,500; or (2) if the Court determines that Nunez is an adequate representative, Nunez and De Anda should each receive an incentive award of $2,500. (Fee Mot. 14 n.4.)

The Court is inclined to agree with Class Counsel's second proposal, with a slight modification—namely, that Nunez and De Anda should receive $3,000 and $2,000, respectively, for their efforts. Nunez has lent his name and time to this case since the beginning, bearing the risk of possible retaliation on behalf of the Class. He met with Mr. Dychter and signed the Settlement Agreement, setting the stage for preliminary and final approval of the Settlement. Although he later objected to the Settlement, the Court finds that, as discussed above, he was in some sense attempting to achieve a better outcome for his Class Members. While the Court ultimately grants the Parties' Motion to Substitute, discussed below, the Court finds that Nunez is nevertheless deserving of an incentive award for the time he spent representing the Class. *See, e.g.*, *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (noting that "the judge rightly made incentive awards to the class representatives who had opposed the settlement as well as to those who had approved it"). De Anda, while relatively new, is "willing to serve as the class representative and to do whatever is necessary to facilitate the Court granting final approval of" the Settlement. (*See generally* Decl. of Bryan De Anda in Supp. of Mot. to Substitute ("De Anda Decl.") ¶ 10, ECF No. 37-5.) In determining to support the Settlement, De Anda reviewed the Settlement Agreement itself, (*id.* ¶ 3), the mediation brief, the briefs filed with the Court seeking Preliminary Approval, and the Court's Order preliminarily approving the Settlement, (*id.* ¶ 4). The Court finds that the Class has—and will—benefit from his informed support of the Settlement, given that the Court has found it to be in the best interests of the Class. Finally, and importantly, there have been no Class Member objections to the service award provision, further indicating the reasonableness of a $5,000 total incentive award for the named representatives. Accordingly, the Court in its discretion determines that the requested Service Awards are reasonable on the facts of this particular case. Given the foregoing, the Court **GRANTS** the Class Counsel's Fee Motion regarding Class Representative Service Awards and **AWARDS** $3,000 to Nunez and $2,000 to De Anda.

*/ / /*

MOTION TO SUBSTITUTE CLASS REPRESENTATIVE

As discussed, the Court has found that Nunez is an adequate representative at the class certification stage. But the Parties also move to remove Nunez as Class Representative and substitute another in his stead now that the Court has determined that the Settlement is fair, reasonable, and adequate. (*See generally* Mot. to Substitute.) The crux of the Parties' argument is that now that the Court has determined the Settlement is in the best interests of the Class, Nunez's continued objection to the Settlement places him in direct conflict with the Class. (*Id.* at 9–10.)

Federal Rule of Civil Procedure 23(a)(4) requires that representative parties in a class action "will fairly and adequately protect the interests of the class." Courts have the inherent power to replace class representatives. *See, e.g.*, *Robichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *8 (N.D. Cal. Mar. 5, 2013) (noting that when a representative plaintiff cannot serve as the class representative "for a reason that does not affect the viability of the class claims, courts regularly allow or order the plaintiffs' counsel to substitute a new representative plaintiff" and collecting cases); *Bogner v. Masari Investments, LLC*, 257 F.R.D. 529, 533 n.1 (D. Ariz. 2009) ("[I]f Plaintiffs prove to be incapable of representing the class effectively, the Court has power to replace them."); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 416 n.8 (1980) (Powell, J., dissenting) (noting that a court "can re-examine [a class representative's] ability to represent the interests of class members [and s]hould it be found wanting, the court may seek a substitute representative or even decertify the class" (citing, e.g., Fed. R. Civ. P. 23(c)(1), (d))). "'If events occurring after class certification render a class representative inadequate, a court may remedy the problem by substituting a new representative.'" *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 937 (E.D. Mich. 2007) (quoting Moore's Federal Practice § 23.25[6]).

As discussed, this appears to be a matter of first impression within the Ninth Circuit. However, the Parties cite two out-of-circuit district court cases that dealt with very similar facts. (Mot. to Substitute 13–14 (citing *Heit v. Van Ochten*, 126 F. Supp. 2d 487 (W.D.

Mich. 2001), and *Olden*, 472 F. Supp. 2d at 937).) Indeed, this case closely resembles the situation in *Heit*. In *Heit*, the parties reached a proposed settlement agreement, 126 F. Supp. 2d at 488, to which the named plaintiff and class representative Heit orally agreed, *id.* at 491 n.1. The Court ordered notice of the settlement be sent to the class, including a deadline for class members to object to the proposed settlement. *Id.* at 488. But, like Nunez, plaintiff Heit later objected to the proposed settlement. *Id.* at 491 n.1, 494–95. Plaintiff's counsel sought to replace Heit with another class member as class representative given his objections to the settlement. *Id.* at 494–95. The Court granted the request, finding that

> [i]n this case, it seems apparent that Mr. Heit's ability to represent the class is wanting and inadequate. Mr. Heit's two written objections to the Proposed Settlement contain mostly the objections addressed in this Opinion. Mr. Heit's objections also make it clear that he absolutely opposes the Proposed Settlement. Yet, a thorough review of the Proposed Settlement by the Court indicates approval is appropriate and in the class's best interest. Having found Mr. Heit's ability to represent the class wanting and inadequate, the Court therefore grants Plaintiff's counsel's Motion to add Mr. Corsetti as the named Plaintiff.

*Id.* at 495.

The court in *Olden* faced a similar scenario. There, like here, the three named class representatives objected to the fairness and adequacy of the settlement for the class as a whole, 472 F. Supp. at 938, which objections the court rejected, *id.* Having found that the settlement was fair, reasonable, and adequate, the Court considered class counsel's motion to substitute these three class representatives by virtue of their continued objection to the settlement. *Id.* at 937–40. The *Olden* Court found *Heit* instructive, noting that "[t]he implications of [*Heit*] are quite clear. If the named class representatives object to a settlement recommended by class counsel that the court otherwise finds in the better interests of the class as a whole, then class counsel cannot continue to represent that party and the class representatives ought to be replaced." *Id.* at 938 (emphasis added). The court granted class counsel's motion to substitute, concluding that "the named class

representatives no longer represent the best interests of the class and a substitution of class representatives is appropriate." *Id.* at 939.

The Sixth Circuit ultimately affirmed the district court's decision to replace the original class representatives. *Olden v. Gardner*, 294 F. App'x 210, 220 (6th Cir. 2008). Although the panel noted that they "may well have made a different decision if [they] were the trial judges," the panel recognized that "the law allows class representatives to be replaced when events occurring after class certification have rendered them inadequate." *Id.* (citing, e.g., *Heit*, 126 F. Supp. 2d at 495).

Here, the Court finds the reasoning of *Heit* and *Olden* persuasive and finds that because Nunez continues to object to the Settlement, which the Court has found fair, reasonable, and adequate, he stands in direct conflict with the Class and thus cannot continue to serve as an adequate Class Representative. In so holding, the Court is again mindful of the Sixth Circuit's observation that, in their view, the principles and purpose of class representatives "suggest that class representatives should not be removed from their positions as class representatives simply because they have attempted to fulfill their duty to protect the interests of the class." *Gardner*, 294 Fed. App'x at 220. The Court agreed with this observation insofar as it concerned Nunez's ability to object to the settlement for class certification purposes, finding that his objection alone did not make him an inadequate class representative. *See supra* "RULE 23 SETTLEMENT CLASS CERTIFICATION," Part III. Rather, in that context, objecting to a Settlement on the grounds that it inadequately provided for the Class actually served to bolster his status as an adequate representative. But in the Court's view, Nunez's continued objection to the Settlement, now deemed fair, reasonable, and adequate, is a conflict "fundamental to the suit" that "go[es] to the heart of the litigation," thus preventing Nunez from continuing to serve as an adequate Class Representative under Rule 23(a)(4). *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 942. Specifically, the Class Members now await their payments from the Settlement, and Nunez, through continued objection, seeks to delay or deny their recovery. This is by definition a conflict of interest; he cannot continue to serve

as the flag-bearer when he would rather see the castle burned to the ground. Accordingly, the Court finds that by virtue of his continued objection to the Settlement, deemed fair, reasonable, and adequate, Nunez can no longer serve as an adequate Class Representative under Rule 23(a)(4).

None of Nunez's cited authority require a different result. For example, Nunez cites several cases for the proposition that "case precedent [is] replete with examples of named plaintiffs opposing proposed settlements." (Mot. to Substitute Opp'n 11 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978); *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615 (9th Cir. 1982); *Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501 (5th Cir. 1981)).) The Court does not dispute that proposition. But this authority does not address the situation where, as here, a party seeks to substitute a class representative based on those objections.

Furthermore, Nunez's reliance on *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), perhaps his strongest authority, is similarly misplaced. In that case, the Seventh Circuit dealt with an approved class action settlement where "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for was present." *Id.* at 728. Among other deficiencies with the settlement agreement, there was only one original class representative, Leonard Saltzman, whose son-in-law was lead counsel for the class. *Id.* at 721. Shortly thereafter four other class members were added as plaintiffs, making a total of five named plaintiffs. *Id.* at 722. When the settlement was presented for preliminary approval, the four newly added plaintiffs objected to the settlement, leaving only Saltzman supporting it. *Id.* A motion was brought to replace these objecting plaintiffs, and the court granted it, leaving Saltzman and four new named plaintiffs who supported the settlement. *Id.* at 722. The Seventh Circuit ultimately reversed the district court's grant of final approval, noting that the settlement "flunked the 'fairness' standard by the one-sidedness of its terms and the fatal conflicts of interest on the part of Saltzman and [class counsel]." *Id.* at 729. On remand, the court ordered the four original plaintiffs, who it called "defrocked" plaintiffs, reinstated. *Id.*

This case is different than *Eubank* for a multitude of reasons, not all of which are worth addressing here. For present purposes, however, the Court finds critical the procedural posture of the "defrocking" in *Eubank*. Specifically, the district court in *Eubank* removed the objecting named plaintiffs at a much earlier stage in the case—before preliminary approval of the settlement agreement. Here, in contrast, Nunez was aware of the proposed settlement, signed off on its terms, failed to object for seven months thereafter, and even supported preliminary approval of the Settlement Agreement. And, as discussed above, Nunez objected as a named class representative and is currently represented in his individual capacity as an objector by a separate law firm. The Court found that his act of objecting to the Settlement, on its own, was insufficient to render him inadequate to represent the Class. Now, however, the Court has determined that the settlement is fair, reasonable, and adequate, and has also determined that his continued objection puts him at odds with the remainder of the Class. The court in *Eubank* did not address this discrete question, and therefore *Eubank* does not here counsel a different outcome.

This leaves the Parties' Motion to Substitute Bryan De Anda as the named Class Representative. (Mot. to Substitute 15–16.) To substitute De Anda for Nunez, the Court must determine whether De Anda meets the typicality and adequacy requirements of Rule 23(a)(3) and (4). In support of their motion, the Parties note that De Anda (1) is a member of the Settlement Class who worked as a non-exempt employee of BAE SDSR for just over 152 work-weeks during the Class Period, between 2013 and 2016; (2) is set to receive $821 based on the amount of time he worked during the time period, and an additional $250 in resolution of the section 203 Waiting Time Penalty claims as a former employee; (3) did not opt out or file an objection in this matter; (4) has met with and spoken with Class Counsel several times and fully understands the responsibilities of being a class representative; and (5) has thoroughly reviewed the previously negotiated settlement agreement preliminarily approved by the Court and finds that it is fair, reasonable, and adequate, having also reviewed Plaintiff's mediation brief as well as the Joint Motion for

Preliminary Approval and the Court's Order on the same. (*Id.*) Based on the above, there is no reason to believe De Anda has any conflict of interest with the proposed Class Members, or that he has failed to vigorously investigate and assess the Settlement on behalf of his Class. Nor does it matter that De Anda seeks to represent the Class at this stage in the case, since he seeks to defend a Settlement he—and the Court—views as fair, reasonable, and adequate. *See, e.g.*, *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *4 (N.D. Cal. Feb. 7, 2008) ("Courts have found that even class representatives who join litigation after a settlement has been reached can adequately represent the class."). Accordingly, the Court finds that De Anda's claims and defenses are typical of the Class's claims and defenses in accordance with Rule 23(a)(3), and that he adequately represents the proposed Class members in accordance with Rule 23(a)(4).

Nunez's arguments to the contrary are unpersuasive. First, he argues that De Anda is inadequate because he does not provide a description of the "nature, department, shift, and title" of his work for BAE SDSR, which "has an effect on the duration and frequency of the occurrence of violations [he] may have experienced." (Mot. to Substitute Opp'n 21.) This is unnecessary. Aside from the fact that Nunez never before provided this information to the Class, all "non-exempt" workers during the covered period are included in the certified class. Nunez further argues that De Anda is not "equipped" to understand the meaning of "non-exempt." (*Id.*) However, Nunez later admits that he has "never heard of Bryan De Anda" and thus has no basis to make such a statement.[13] (Nunez Substitute Opp'n Decl. ¶ 47.) Finally, Nunez objects to the fact that De Anda has not worked since 2016, "which may indicate he is not able to comment on the ongoing violations that occurred after the filing of the complaint, a major issue facing the merits of the proposed settlement." (Mot. to Substitute Opp'n 21.) This argument fails for at least two reasons. First, Nunez's argument is premised on a speculative conflict, and "this circuit does not

---

[13] Further confounding Nunez's credibility is his claim that he has never heard of De Anda and then, just one sentence later, stating that he "believe[s] that [De Anda] no longer works for BAE, and has not for some time." (Nunez Substitute Opp'n Decl. ¶ 47.) Both cannot be true.

favor denial of class certification on the basis of speculative conflicts." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003). Second, former employees are included as Class Members in this Settlement Agreement, and former employees have routinely been found adequate to serve as class representatives. *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 455 (9th Cir. 2009) (finding that former employees could adequately serve as class representatives for a class that included current and former employees). In sum, Nunez has failed to demonstrate that De Anda is an inadequate class representative or that his claims and defenses are otherwise not typical of the claims and defenses of the class. Rather, the record shows that De Anda is informed and willing to act in the best interests of the Class. (*See generally* De Anda Decl.) Accordingly, the Court finds that De Anda's claims and defenses are typical of those of the Class under Rule 23(a)(3) and that he adequately represents the Class in accordance with Rule 23(a)(4). Thus, the Court **GRANTS** the Parties' Motion to Substitute.

## CONCLUSION

For the foregoing reasons, the Court: (1) **AFFIRMS** its certification of the Settlement Class; (2) **FINDS** that the Settlement Agreement is fair, reasonable, and adequate; (3) **GRANTS** Class Counsel's Motion for Fees and Costs; and (4) **GRANTS** the Parties' Joint Motion to Substitute Class Representative. Pursuant to the Parties Agreement, the action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: November 14, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

16-CV-2162 JLS (NLS)